UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| MARILYN M. THORNTON, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.: 3:13-CV-354-TAV-CCS |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## **MEMORANDUM AND ORDER**

This case is before Court on Plaintiff's Motion for Summary Judgment and Memorandum in Support [Docs. 13, 14] and the Defendant's Motion for Summary Judgment and Memorandum in Support [Docs. 19, 20]. Plaintiff Marilyn M. Thornton seeks judicial review of the decision of the Administrative Law Judge ("the ALJ"), the final decision of the Defendant Carolyn W. Colvin, Acting Commissioner of Social Security ("the Commissioner").

Plaintiff filed a Title II application for a period of disability and disability insurance benefits on October 5, 2010, alleging disability since January 17, 2009, due to depression, attention deficit hyperactivity disorder, and bipolar disorder. Her application was denied initially and upon reconsideration. Plaintiff then requested a hearing, which was held before ALJ Douglas Kile in Knoxville, Tennessee on December 29, 2011. At the hearing, plaintiff amended her onset date to July 1, 2009. Plaintiff was present and testified. The ALJ issued an unfavorable decision on February 14, 2012, finding plaintiff

was not disabled. The Appeals Council denied plaintiff's request for review of that decision; thus, the decision of the ALJ became the final decision of the Commissioner. Plaintiff now seeks judicial review of the Commissioner's decision.

I.  **ALJ FINDINGS**

The ALJ made the following findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2012.
>
> 2. The claimant has not engaged in substantial gainful activity since July 1, 2009, the alleged onset date. (20 CFR 404.1571 *et seq.*).
>
> 3. The claimant has the following combination of severe impairments: degenerative disk disease, knee pain, chronic obstructive pulmonary disease, anxiety, and depression (20 CFR 404.1520(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526).
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except that she should not have frequent contact with the general public; she has the inability to learn, understand, and carry out more than simple job instructions; she cannot handle excessive vibrations; and she cannot operate foot controls on a frequent basis.
>
> 6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

2

Case 3:13-cv-00354-TAV-CCS   Document 22   Filed 08/06/14   Page 2 of 19   PageID #: 821

7. The claimant was born on May 9, 1965 and was 43 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. The claimant subsequently changed age category to closely approaching advanced age (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 CFR 404.1568).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from July 1, 2009, through the date of this decision (20 CFR 404.1520(g)).

[Tr. 15–21].

## II. DISABILITY ELIGIBILITY

An individual qualifies for disability insurance benefits if he or she: (1) is insured for disability insurance benefits; (2) has not attained retirement age; (3) has filed an application for disability insurance benefits; and (4) is under a disability. 42 U.S.C. § 423(a)(1).

"Disability" is the inability "[t]o engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous

3

period of not less than twelve months." *Id.* § 423(d)(1)(A). An individual shall be determined to be under a disability only if his or her physical or mental impairment or impairments are of such severity that he or she is not only unable to do previous work but cannot, considering the individual's age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which the individual lives, or whether a specific job vacancy exists for the individual, or whether the individual would be hired if he or she applied for work. *Id.* § 423(d)(2)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). The plaintiff bears the burden of proof at the first four steps. *Id.* The burden shifts to the Commissioner at step five. *Id.* At the fifth step, the Commissioner must prove that there is work available in the national economy that the plaintiff could perform. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987)).

### III. STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009) (citing *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). If the ALJ applied the correct legal standards and his findings are supported by substantial evidence in the record, his decision is conclusive and must be affirmed. *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004); 42 U.S.C. § 405(g). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quotation omitted); *see also Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison v. NLRB*, 305 U.S. 197, 229 (1938)).

It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. *Crisp v. Sec'y of Health & Human Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Walters*, 127 F.3d at 528.

In addition to reviewing the ALJ's findings to determine whether they were supported by substantial evidence, the Court also reviews the ALJ's decision to determine whether it was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner. *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). The Court may, however, decline to reverse and remand the Commissioner's determination if it finds that the ALJ's procedural errors were harmless.

An ALJ's violation of the Social Security Administration's procedural rules is harmless and will not result in reversible error "absent a showing that the claimant has been prejudiced on the merits or deprived of substantial rights because of the [ALJ]'s procedural lapses." *Wilson*, 378 F.3d at 546–47. Thus, an ALJ's procedural error is

6

harmless if his ultimate decision was supported by substantial evidence and the error did not deprive the claimant of an important benefit or safeguard. *See id.* at 547.

On review, plaintiff bears the burden of proving entitlement to benefits. *Boyes v. Sec'y. of Health & Human Servs.,* 46 F.3d 510, 512 (6th Cir. 1994) (citing *Halsey v. Richardson*, 441 F.2d 1230 (6th Cir. 1971)).

## IV.  POSITIONS OF THE PARTIES

Plaintiff raises a single allegation of error: that the ALJ failed to properly weigh the evidence of her treating psychologist and psychiatrist [Doc. 14 at 7]. The Commissioner argues that the ALJ properly considered the medical opinions of record [Doc. 20 at 3].

## V.  ANALYSIS

As an initial matter, the Court observes that plaintiff's argument heading appears to challenge the ALJ's findings regarding plaintiff's treating psychologist, Nancy Brown, Ph.D., and treating psychiatrist, C. Randall May, M.D. [*See* Doc. 14 at 7]. The body of plaintiff's memorandum, however, argues only that the ALJ erroneously rejected Dr. Brown's opinion. As a result, the Court finds that plaintiff has waived any argument regarding the ALJ's treatment of Dr. May's opinion. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) (quoting with approval *Citizens Awareness Network, Inc. v. U.S. Nuclear Regulatory Comm'n*, 59 F.3d 284, 293–94 (1st Cir. 1995) (holding that "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible

7

argument in the most skeletal way, leaving the court to . . . put flesh on its bones"). Accordingly, the Court will limit its review to whether the ALJ properly addressed and weighed Dr. Brown's opinion pursuant to agency rules and regulations, as well as controlling case law.

Plaintiff contends that her residual functional capacity ("RFC") was not supported by substantial evidence because the ALJ ignored Dr. Brown's opinion and, instead, relied on the opinion of a non-treating, non-examining state agency physician without "good reason" [Doc. 14 at 7]. More specifically, plaintiff maintains that "the ALJ ignored ample records" by Dr. Brown, that Dr. Brown's opinion was consistent with the record as a whole, and that the ALJ failed to specify the weight assigned to Dr. Brown's opinion and failed to analyze the "good reason" requirement [*Id.* at 9–11].

The Commissioner concedes that the ALJ did not specify the weight he assigned to Dr. Brown's opinion but argues that the omission was "harmless because it is clear from the language in the ALJ's decision that he did not give the opinion any significant weight" [Doc. 20 at 5]. Moreover, the Commissioner asserts that the record is void of any treatment notes authored by Dr. Brown that would support her opinion [*Id.* at 3]. In addition, the Commissioner maintains that other medical evidence supports the ALJ's finding that Dr. Brown's opinion was inconsistent with other evidence of record [*Id.* at 5].

Plaintiff filed a response characterizing the Commissioner's augments as post-hoc rationalization for the ALJ's failure to weigh Dr. Brown's opinion [Doc. 21 at 2].

8

Plaintiff further asserts that the Commissioner is unable to point to anything within the four corners of the ALJ's decision demonstrating that the treating physician rule was properly applied [*Id.* at 2–3].

On April 26, 2011, Dr. Brown completed a form entitled "Medical Record Summation Inquiry" ("summation inquiry"), wherein she responded to a variety of short answer and multiple-choice questions regarding what type or whether any jobs existed for plaintiff and the basis for such opinion [Tr. 558–61]. The summation inquiry was accompanied with a letter written by Dr. Brown, also dated April 26, 2011, as additional support toward plaintiff's application for disability benefits [Tr. 554–57].

Dr. Brown's letter details her treating relationship with plaintiff, which began in 2004, and essentially provides a detailed background of plaintiff's history and mental condition, leading Dr. Brown to ultimately opine that plaintiff is not currently able to work and most likely will never be able to hold down a job [*Id.*]. The letter explains that since August 2010, Dr. Brown has seen plaintiff in therapy on a weekly basis [Tr. 554]. Diagnostically, plaintiff suffers from "Bipolar I Disorder, Most Recent Episode Depressed, Sever with Psychotic Features," "Posttraumatic Stress Disorder," "Panic Disorder with Agoraphobia," and "Borderline Personality Disorder" [*Id.*]. In addition, plaintiff suffers from an abusive family background and was psychiatrically hospitalized in December 2007, after becoming very suicidal, and again in August 2010, for severe depression [Tr. 554–55]. Although plaintiff worked for some time at various jobs, mainly as a restaurant server, plaintiff had trouble getting along with her coworkers, her

9

Case 3:13-cv-00354-TAV-CCS   Document 22   Filed 08/06/14   Page 9 of 19   PageID #: 828

bosses took advantage of her, and she experienced sexual and verbal harassment in the workplace [Tr. 555–56]. Dr. Brown noted that plaintiff was depressed on most days and was heavily dependent on her husband for emotional support and helping with household chores [Tr. 556–57].

In the summation inquiry, Dr. Brown attributed plaintiff's mental impairments to "a genetic predisposition and tremendous early childhood neglect and abuse" [Tr. 558]. Dr. Brown rated plaintiff's ability to perform the following functions as "poor": concentrate and keep pace; adapt to stressful circumstances in the workplace; understand, remember, and carry out complex instructions; remember and carry out detailed, but not complex, instructions; behave in an emotionally stable manner; relate predictably in social situations; deal with the public; deal with stress of ordinary work; demonstrate reliability; persist at assigned tasks; relate to peers, supervisors, and co-workers; work at a consistent pace; complete tasks commonly found in work settings; use judgment; and maintain attention [Tr. 559–60]. Plaintiff was also rated as being able to do the following in a "fair" manner: perform daily living activities independently; interact appropriately, communicate effectively, and engage in other aspects of social function; and follow work rules [*Id.*]. Finally, plaintiff was given a rating of "good" regarding the following functions: understand and carry out simple instructions; maintain personal appearance; and be aware of hazards [*Id.*]. Dr. Brown further opined that if plaintiff was placed in a full-time employment setting, she would quickly become overwhelmed, extremely depressed, paranoid, and likely experience a "meltdown" [Tr. 561]. Dr. Brown assessed

10

a Global Assessment of Functioning ("GAF") score of 45, noting that plaintiff's highest and lowest scores in the past year were 50 and 25[1] [*Id.*].

In the disability determination, after summarizing the above evidence, the ALJ stated the following regarding Dr. Brown's opinion:

> The undersigned finds the foregoing opinion to be exaggerated in the context of the overall medical evidence of record. With past GAF scores in the moderate range and evidence that the claimant through therapy and medication had seen improvements, the undersigned finds the foregoing opinion to be overbroad in its conclusions that the claimant would have such an extreme level of difficulty functioning in the workplace, and that the claimant would have a personal responsibility to put forth adequate effort to try to function as best she could in a work environment. (Exhibit 17F).

[Tr. 19]. The ALJ later continued:

> Great weight is given to the opinions of the State agency physical and psychological consultants who provided assessments and reviews as they are consistent with the overall evidence of record. The State agency consultants adequately considered the combined effect of the claimant's impairments. The claimant's treating physicians' opinions are given little weight to the extent that they conclude that the claimant had greater limitations in work-related physical functioning than indicated by the State agency consultants. To the extent that they support the finding herein, the opinions of the psychological evaluations are given greater weight.

[Tr. 20].

---

[1] A GAF score between 21 and 30 indicates behavior that is considerably influenced by delusions or hallucinations, a serious impairment in communication or judgment, or an inability to function in almost all areas. Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 34, 4th ed. (revised) 2000. A GAF score between 41 and 50 indicates serious symptoms or any serious impairment in social, occupation, or school functioning. *Id.*

Under the Social Security Act and its implementing regulations, if a treating physician's opinion as to the nature and severity of an impairment is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record, it must be given controlling weight. 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2). But where an opinion does not garner controlling weight, the appropriate weight to be given to an opinion will be determined based upon the following factors: length of treatment, frequency of examination, nature and extent of the treatment relationship, amount of relevant evidence that supports the opinion, the opinion's consistency with the record as a whole, the specialization of the source, and other factors which tend to support or contradict the opinion. 20 C.F.R.§§ 404.1527(c)(2) and 416.927(c)(2).

When an ALJ does not give a treating physician's opinion controlling weight, the ALJ must always give "good reasons" for the weight given to a treating source's opinion in the decision. 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2). A decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for the weight." Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5 (July 2, 1996). Nonetheless, the ultimate decision of disability rests with the ALJ. *See King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984); *Sullenger v. Comm'r of Soc. Sec.*, 255 F. App'x 988, 992 (6th Cir. 2007).

The Court finds several errors in the ALJ's assessment of Dr. Brown's opinion. First, while it is clear from the ALJ's initial discussion of Dr. Brown's opinion that he did not totally accept or adopt the opinion, the ALJ's later explanation for the weight assigned makes it ambiguous as to how much deference was actually given. The fact that the ALJ's discussion might clearly indicate "that he decided not to give the opinion any significant weight," as argued by the Commissioner, does not mean that the opinion was assigned no weight. *See Blakley*, 581 F.3d at 408 (holding that "[a] finding that a treating source medical opinion . . . is not entitled to controlling weight [does] not [mean] that the opinion should be rejected"). The ALJ was required to assign a specific weight to Dr. Brown's opinion, and the failure to do so, as the Court finds is the case here, "alone constitutes error." *Cole v. Astrue*, 661 F.3d 931, 938 (6th Cir. 2011).

Second, the ALJ failed to give sufficiently specific "good reasons" for finding Dr. Brown's opinion less than fully credible. Once an ALJ declines to give controlling weight to a treating physician's opinion, the ALJ must then balance the factors set forth in 20 C.F.R. § 404.1527(c)(2) to determine what weight the opinion was due. *See Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (holding that the section 1527(c)(2) "factors are properly applied only *after* the ALJ has determined that a treating-source opinion will not be given controlling weight" (emphasis added)). "If the Commissioner does not give a treating-source opinion controlling weight, then the opinion is weighed based on the length, frequency, nature, and extent of the treatment relationship, as well as the treating source's area of specialty and the degree to which the

13

opinion is consistent with the record as a whole and is supported by relevant evidence." *Id.* (citations omitted). Here, the ALJ attempted to provide reasons why he did not fully accept Dr. Brown's opinion, *i.e.*, it was exaggerated and overbroad, *before* he purportedly assigned a weight to the opinion. [See Tr. 19, 20]. Moreover, the ALJ never indicates that he considered the frequency of examination, the length of the treatment relationship, or the extent of the treatment relationship as required by 20 C.F.R. § 404.1527(c)(2).

Even if the Court were to give the ALJ's decision a generous reading by comparing Dr. Brown's opinion to the other opinions and medical evidence discussed by the ALJ as possible reasons for finding Dr. Brown's opinion to be "exaggerated in the context of the overall medical evidence of record" and "overbroad in its conclusions," this other evidence was still discussed prior to the ALJ's purported assignment of weight to Dr. Brown's opinion, and thus, such evidence speaks to plaintiff's claim of disability in general and not in the context of evaluating Dr. Brown's opinion. *See Kennedy v. Comm'r of Soc. Sec.*, 965 F. Supp. 2d 937, 943 (E.D. Tenn. 2013) (finding that even if the court were to liberally construe the ALJ's discussion of the plaintiff's medical history as reasons for discounting the treating source's opinion, "such statements appear to be made not in the context of evaluating a treating physician's opinion for controlling weight but rather regarding claimant's allegations of disability generally"); *Cummings v. Comm'r of Soc. Sec.*, No. 3:11-CV-614, 2013 WL 1192817, at *5 (E.D. Tenn. Mar. 22, 2013) (noting that "[a] review of the ALJ's decision indicates that any analysis of evidence of record that could be considered relevant to the § 1527(c)(2) factors was

14

conducted prior to the ALJ's statement that he declined to adopt the opinion"). Accordingly, the Court finds that any potential cited reasons for rejecting Dr. Brown's opinion are too vague to make clear to a subsequent reviewer the reason for rejecting the opinion.

Because the ALJ failed to specify the weight assigned to Dr. Brown's opinion and "good reasons" for that weight, the ALJ did not properly apply the treating physician rule in this case. The Court must therefore consider whether the ALJ's error was harmless. A violation of the "good reasons" rule can be deemed "harmless error" if:

> (1) a treating source's opinion is so patently deficient that the Commissioner could not possible credit it; (2) if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion; or (3) where the Commissioner has met the goal of § 1527[(c)](2) . . . even though she has not complied with the terms of the regulation.

*Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551 (6th Cir. A 2010) (citation omitted).

Upon review of the record, the Court finds that the ALJ did not adopt Dr. Brown's opinion. The Court further finds that because the ALJ's opinion does not sufficiently explain the reasons for his conclusion, the Commissioner cannot show that the ALJ has otherwise met the regulation's goal. Determining whether Dr. Brown's opinion is so patently deficient, however, presents a closer question for the Court.

Plaintiff argues that the ALJ ignored "ample records" by Dr. Brown that support a finding of disability. The Court is unsure of what "ample records" plaintiff is referring

15

to.  The evidence of record contains a single summation inquiry, accompanied by a letter, by Dr. Brown.  While Dr. Brown may have treated plaintiff since 2004, a single opinion, even from a treating source, does not necessarily carry the weight plaintiff seems to argue.  *See id.* (holding that the treating-source rule is not "a procrustean bed, requiring an arbitrary conformity at all times").  There must be a supportable basis for arriving at the conclusion adopted by Dr. Brown if her opinion is to be given controlling weight.  *See* 20 C.F.R. § 1527(c)(2) (noting "supportability of opinion" as one of the factors that should be taken into consideration when determining what weight a treating source should be given).  Here, however, the record is void of any, let alone ample, records or treatment notes from Dr. Brown.  Moreover, while Dr. Brown noted she saw plaintiff on a weekly basis since August 2010, at the hearing, plaintiff testified that she had not seen Dr. Brown in three months [Tr. 35].

Also troublesome to the Court is the other opinion evidence cited by plaintiff, which is argued as being consistent with Dr. Brown's opinion, that is dated sometime before plaintiff's onset date of July 1, 2009.[2]  *See Lowery v. Comm'r of Soc. Sec.*, 886 F. Supp. 2d 700, 716 (S.D. Ohio 2012) (holding that, for purposes of disability benefits, "the ALJ generally only considers evidence from the alleged disability onset date through the date last insured") (citing *King v. Sec'y of Health & Human Servs.*, 896 F.2d 204, 205–06

---

[2] The Court notes that plaintiff had previously filed an application for disability benefits on August 29, 2006, and was denied benefits on January 21, 2009 [Tr. 58–68], which may explain why some of the opinion evidence of record is dated much earlier than plaintiff's application and onset date in this case.

16

(6th Cir.1990)); *see also Griffith v. Comm'r of Soc. Sec.*, No. 12-CV-10575, 2013 WL 4084682, at *7 (E.D. Mich. Aug. 13, 2013) (holding the same).

For example, plaintiff argues that Dr. Brown's opinion is consistent with the January 2007 opinion of consultant examiner Tracy Allred, M.D., who opined that plaintiff was mildly limited in her ability to understand and remember, moderately to significantly limited in her ability to sustain concentration and persistence, and significantly limited in her ability to adapt and tolerate stress associated with day-to-day activities as well as social interaction [Tr. 246]. An updated consultative examination performed by Philip Axtell, Ph.D., in January 2011, however, offers a much different picture of plaintiff's mental limitations. Dr. Axtell found that plaintiff falls within the average range of intellectual functioning and that she demonstrated no evidence of an impairment in her ability to sustain concentration, follow instructions, handle her finances, nor did she experience long term or remote memory functioning deficiencies. [Tr. 347]. In addition, plaintiff demonstrated only mild impairment in her ability to adapt to change and moderate impairment in social relating [Tr. 347]. Furthermore, a state agency physician, Robert de la Torre, Psy. D., completed a "Mental Residual Functional Capacity Assessment" on February 8, 2011, finding that plaintiff has the ability to understand, remember, and carry out simple and 1–3 step detailed instructions, can concentrate and persist for a two-hour time period in an eight-hour workday, can interact appropriately with the general public, supervisors, and peers, but would work better with

17

things rather than people, and can set goals independently and adapt to infrequent change [Tr. 359].

Plaintiff also contends that a "Medical Source Statement (Mental)" completed by her treating psychiatrist, Dr. May, in February 2008, demonstrates that plaintiff has difficulty in most areas of functioning [Tr. 289–90]. Plaintiff further cites to a December 2010 treatment note by Dr. May as stating that plaintiff would be "dysfunctional for a job setting" [Tr. 379]. A closer look at the treatment note reveals, however, that Dr. May was recording plaintiff's subjective allegation that she "perceives [herself] dysfunctional for a job setting" [*Id.*]. This appears to be the correct reading of the treatment note when considering immediately before this statement was written, Dr. May noted that plaintiff had recently changed jobs and seemed to be doing somewhat better [*Id.*]. More telling is the fact that in subsequent appointments in June, August and October 2011, Dr. May consistently noted that plaintiff was "overall much better now," "has improved," and was "doing much better" [Tr. 660–62]. In addition, Dr. May rated plaintiff's anxiety and depression as a "1" or "2" on a scale of "1" to "5" during each visit [*Id.*].

Thus, the opinion evidence of record dated between plaintiff's onset date and date last insured calls into question the supportability and consistency of Dr. Brown's opinion, particularly where the record is void of any treatment notes from Dr. Brown. The Court nonetheless observes that the ALJ is required to "evaluate every medical opinion [he or she] receive[s]," 20 C.F.R. § 404.1527(c), which would include the earlier opinions of Drs. Allred and May. Furthermore, because the ALJ is charged with resolving conflicts

18

in the evidence, the Court finds that the ALJ is better suited for determining the relevancy of these earlier medical opinions, as well as a proper application of the treating physician rule to Dr. Brown's opinion, in light of the more recent evidence of record. Therefore, the Court finds that it is unable to hold as a matter of law that Dr. Brown's opinion is so patently deficient that it could not possibly be credited. Although a proper analysis may indeed support a finding that Dr. Brown is not entitled to controlling weight, or any weight at all, the Sixth Circuit "has made clear that [it] do[es] not hesitate to remand when the Commissioner has not provided good reasons for the weight given to a treating physician's opinion." *Gayheart*, 710 F.3d at 380 (alteration in original) (quoting *Cole*, 661 F.3d at 939).

Accordingly, the Court will remand the case to the ALJ for clarification of the weight accorded to the opinion of Dr. Brown and the reasons for according such weight pursuant to the factors set forth in 20 C.F.R. § 1527(c)(2).

## VI. CONCLUSION

Based upon the foregoing, Plaintiff's Motion for Summary Judgment [Doc. 13] is **GRANTED**, and the Commissioner's Motion for Summary Judgment [Doc. 19] is **DENIED**. It is **ORDERED** that this case be **REMANDED** to the ALJ for the reasons stated herein.

IT IS SO ORDERED.

s/ Thomas A. Varlan
CHIEF UNITED STATES DISTRICT JUDGE

19